**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Haley Hoff and Raquel Flaaen, as parent and natural Guardian of decedent Randall Hoff's Minor Children, Hanah Hoff and Hevyn Hoff, individually, | ) ) ) ) ) | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| The Elkhorn Bar and Ray Schmidt, | ) ) | Case No. 1:08-cv-071 |
| Defendants. | ) ) | |

Before the Court is the Defendants' Motion for Judgment on the Pleadings filed on October 13, 2008.  See Docket No. 16.  The Plaintiffs filed a brief in opposition to the motion on November 17, 2008.  See Docket No. 23.  The Defendants filed a reply brief on November 26, 2008.  See Docket No. 25.  Oral argument was held on May 5, 2009, in Bismarck, North Dakota.  Representing the Plaintiffs at the hearing was attorney Timothy Q. Purdon, and the Defendants were represented by Mitchell D. Armstrong. The Court grants in part and denies in part the Defendants' motion.

I.      **BACKGROUND**

On the evening of February 5, 2007, the decedent, Randall Hoff, consumed a number of alcoholic beverages in the Elkhorn Bar in Richardton, North Dakota.  Defendant Ray Schmidt is the owner and operator of the bar.  Hoff became disruptive and was physically ejected from the bar, but he was allowed to re-enter after a short period of time.  Upon his re-entry, Hoff was served additional alcoholic beverages.  At approximately midnight, Hoff again became disruptive and was physically ejected from the bar a second time.  The doors to the Elkhorn Bar were then locked to prevent him from re-entering.

Hoff was wearing a cloth jacket and jeans and the temperature outside was below zero. As Hoff was walking away from the bar, he slipped and fell, striking his head on the pavement. Hoff fell at a location north of the Elkhorn Bar and died as a result of the injuries sustained from the fall.

On July 28, 2008, plaintiff Haley Hoff, the natural child of Randall Hoff, and plaintiff Raquel Flaaen, as the parent and natural guardian of Randall Hoff's minor children, Hanah Hoff and Hevyn Hoff, individually, filed this action in federal district court. See Docket No. 1. In the Plaintiffs' second amended complaint, they allege a wrongful death claim and a claim pursuant to the Dram Shop Act, N.D.C.C. § 5-01-06.1. The Plaintiffs contend the Defendants knowingly sold and served alcoholic beverages to Randall Hoff after he was obviously intoxicated, and they ejected him from the Elkhorn Bar in a manner and under circumstances which were negligent.

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Defendants request judgment on the pleadings and a dismissal of the action in its entirety. The Defendants argue the Dram Shop Act does not apply to benefit the intoxicated person or the intoxicated person's relatives, and they had no legal duty to refrain from ejecting Randall Hoff.

## II.   DIVERSITY JURISDICTION

It is well-established that federal courts are courts of limited jurisdiction. Unlike state courts, federal courts have no "inherent" or "general" subject matter jurisdiction. Federal courts can only adjudicate those cases which the Constitution and Congress authorize them to adjudicate. Those types of cases generally involve diversity of citizenship (28 U.S.C. § 1332) or a federal question (28 U.S.C. § 1331). Pursuant to 28 U.S.C. § 1332, district courts have original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and the parties are citizens of different states.

The Plaintiffs contend the Court has jurisdiction to hear the matter pursuant to 28 U.S.C. § 1332. The Plaintiffs seek relief in excess of $75,000.  Plaintiff Haley Hoff is a resident of Kenai, Alaska. Plaintiff Raquel Flaaen is a resident of Kenai, Alaska, and is the mother and natural guardian of decedent Randall Hoff's minor children, Hanah Hoff and Hevyn Hoff.  Defendant Elkhorn Bar is a business located in Richardton, North Dakota, and is owned by defendant Ray Schmidt, a resident of Richardton, North Dakota.

The Court finds that it has jurisdiction to hear the action pursuant to 28 U.S.C. § 1332.  The Court will apply the substantive law of North Dakota.  Paracelsus Healthcare Corp. v. Philips Med. Sys., 384 F.3d 492, 495 (8th Cir. 2004).  In the absence of controlling North Dakota law, the Court is obligated to predict what North Dakota law is based upon "'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'"  Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005) (quoting Bass v. Gen. Motors Corp., 150 F.3d 842, 846-47 (8th Cir. 1998)).

III.   **STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure establishes that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).  When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor."  Ashley County, Ark. v. Pfizer,

Inc., 552 F.3d 659, 665 (8th Cir. 2009) (quoting Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006)).  The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Ashley County, Ark., 552 F.3d at 665.  "When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'"  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999); Piper Jaffray Companies, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 967 F. Supp. 1148, 1152 (D. Minn. 1997)).

## IV.    LEGAL DISCUSSION

### A.    DRAM SHOP LAW

Dram shop laws are sui generis.  Hurt v. Freeland, 589 N.W.2d 551, 555 (N.D. 1999).  In establishing dram shop laws, the North Dakota Legislative Assembly intended to create a new type of liability for the wrongful sale of alcohol.  Zueger v. Carlson, 542 N.W.2d 92, 95 (N.D. 1996).  "'The liability created by the Civil Damage Act[1] has no relation to any common law liability, or to any theory of tort.  It was the intention of the legislature to create liability in a class of cases where there was no liability under the common law.'"  Id. (quoting Aanenson v. Bastien, 438 N.W.2d 151, 153 (N.D. 1989)).

---

[1]  Prior versions of dram shop statutes, N.D.C.C. § 5-01-06 and N.D.R.C. § 5-0121 (1943), were referred to as either the Civil Damage Act or the Dram Shop Act.

Under Sections 5-01-06.1 and 5-01-09 of the North Dakota Century Code, North Dakota established a statutory duty for persons providing alcohol to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person.  N.D.C.C. § 5-01-06.1 provides:

> Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault under section 32-03.2-02[2] against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to a person under twenty-one years of age, an incompetent, or an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32-21-02.  No claim for relief pursuant to this section may be had on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or personal representatives, nor may a claim for relief be had on behalf of an adult passenger in an automobile driven by an intoxicated person or on behalf of the passenger's estate or personal representatives.

N.D.C.C. § 5-01-09(1) provides:

> Any individual knowingly delivering alcoholic beverages to an individual under twenty-one years of age, except as allowed under section 5-02-06, or to a habitual drunkard, an incompetent, or an obviously intoxicated individual is guilty of a class A misdemeanor, subject to sections 5-01-08, 5-01-08.1, and 5-01-08.2.

The primary goal in construing a statute is to ascertain legislative intent.  Hoffman v. North Dakota Workers Comp. Bureau, 651 N.W.2d 601, 608 (N.D. 2002).  In ascertaining legislative intent, the court must look to the plain language of the statute and give each word its ordinary meaning.  State ex rel. Clayburgh v. Am. West Cmty. Promotions, Inc., 645 N.W.2d 196, 205 (N.D. 2002).  "Although courts may resort to extrinsic aids to interpret a statute if it is ambiguous," the court should "look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is

---

[2]  Section 32-03.2-02 of the North Dakota Century Code governs modified comparative fault and provides in part:

> Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering.

presumed clear from the face of the statute." <u>State v. Norman</u>, 660 N.W.2d 549, 554 (N.D. 2003) (quoting <u>Overboe v. Farm Credit Services of Fargo</u>, 623 N.W.2d 372, 375 (N.D. 2001)).

As stated above, N.D.C.C. § 5-01-06.1 provides, in relevant part, "[e]very spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief . . . against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to . . . an obviously intoxicated person . . . ."  Chapter 5 of the North Dakota Century Code does not define the word "injured," nor does it provide any guidance as to the word's meaning.  The Plaintiffs interpret N.D.C.C. § 5-01-06.1 broadly, arguing the statute provides a remedy for injuries sustained by the surviving spouse, children, parents, guardians, employer, or other person <u>of the intoxicated person</u> where the injury is the intoxicated person's death.  The Plaintiffs state, "In this case, the Plaintiffs, the Hoff children, have been <u>injured</u> by an obviously intoxicated person.  That is, Randall Hoff was an obviously intoxicated person.  He fell and struck his head and died.  In doing so, he <u>injured</u> his children as they now have no father to provide them with monetary and emotional support." <u>See</u> Docket No. 23 (emphasis added).  In support of their argument, the Plaintiffs contend that N.D.C.C. § 5-01-06.1 prohibits only the intoxicated person and the intoxicated person's estate from filing a claim as the injured party.  The Plaintiffs contend that because the North Dakota Legislative Assembly did not preclude causes of action by the intoxicated person's family, they are entitled to seek relief as injured persons under the statute.  However, the Defendants argue that "[t]he clear language of the dram shop statute in North Dakota only allows a person 'who is injured by any obviously intoxicated person' a claim for relief.  In this case, the plaintiffs are not alleging they were injured 'by an obviously intoxicated person,' and therefore, their dram shop claim should be dismissed." <u>See</u> Docket No. 17.

The language of N.D.C.C. § 5-01-06.1 clearly prohibits the intoxicated person, the intoxicated person's estate, and the intoxicated person's personal representatives from bringing claims under the

statute.  Apart from these three exceptions, every spouse, child, parent, guardian, employer, or other person who is injured may bring an action under the statute.  The North Dakota Legislative Assembly has failed to define what is meant by the term "injured," and N.D.C.C. § 5-01-06.1 fails to clearly indicate whether the intoxicated person's family is barred from recovering under the statute.  Both parties have presented different, but rational interpretations of N.D.C.C. § 5-01-06.1.

When a statute is ambiguous, a court may look to extrinsic aids to ascertain legislative intent. In re M.B.K., 639 N.W.2d 473, 477 (N.D. 2002).  Section 1-02-39 of the North Dakota Century Code provides a list of aids that a court may consider in interpreting an ambiguous statute:

1.   The object sought to be attained.

2.   The circumstances under which the statute was enacted.

3.   The legislative history.

4.   The common law or former statutory provisions, including laws upon the same or similar subjects.

5.   The consequences of a particular construction.

6.   The administrative construction of the statute.

7.   The preamble.

N.D.C.C. § 1-02-39.

In 1987, the current version of the dram shop statutes was enacted.  The language of the prior dram shop statutes differs significantly from the current version found at N.D.C.C. §§ 5-01-06.1 and 5-01-09.  The 1985 version of the dram shop statutes, N.D.C.C. §§ 5-01-06 and 5-01-09, reads as follows:

*5-01-06. Recovery of damages resulting from intoxication.*  Every spouse, child, parent, guardian, employer, or other person who is injured <u>by any intoxicated person, or in consequence of intoxication,</u> has a claim for relief against any person who caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages

7

contrary to statute for all damages sustained, and in the event death ensues, the survivors of the decedent are entitled to damages defined in section 32-21-02.

*5-01-09.  Delivery to certain persons unlawful.*  Any person delivering alcoholic beverages to a person under twenty-one years of age, an habitual drunkard, an incompetent, or an intoxicated person is guilty of a class A misdemeanor, subject to the provisions of sections 5-01-08, 5-01-08.1 and 5-01-08.2.

Stewart v. Ryan, 520 N.W.2d 39, 44 (N.D. 1994) (citing N.D.C.C. § 5-01-06 (1985); N.D.C.C. § 5-01-09 (1985)) (emphasis added).  The 1943 version of the dram shop law provided:

Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, or any person, shall have a right of action, in his or her own name, against any person who, by selling, bartering, or giving away alcoholic beverages contrary to the provisions of this title, shall have caused the intoxication of such person, for all damages actually sustained as well as for exemplary damages.  All damages recovered by a minor under this section shall be paid either to such minor, or his or her parent, guardian, or next friend, as the court shall direct.  All suits for damages under this section shall be by civil action in any of the courts.

Iszler v. Jorda, 80 N.W.2d 665, 667 (N.D. 1957) (citing N.D.R.C. § 5-0121 (1943)) (emphasis added).

The prior dram shop statutes permitted recovery in two circumstances: (1) injury by the intoxicated person and (2) injury in consequence of intoxication.  See Stewart, 520 N.W.2d at 45; Iszler, 80 N.W.2d at 667-68.

Case law interpreting whether the intoxicated person's family can recover under the prior versions of the dram shop statutes is limited.  The North Dakota Supreme Court did not have an opportunity to consider whether Section 5-0121 of the North Dakota Revised Code of 1943 provided for recovery for the intoxicated person's family.  However, the North Dakota Supreme Court permitted an intoxicated person's spouse to recover under N.D.C.C. § 5-01-06.  See Hastings v. James River Aerie No. 2337–Fraternal Order of Eagles, 246 N.W.2d 747 (N.D. 1976).

In Hastings, the wife and daughter of Norman Hastings filed an action against a bar for selling liquor to Hastings when he was intoxicated.  The wife and daughter argued that the sale of alcohol to

Hastings caused him to be convicted of the crime of murder for the shooting death of Evangeline Opp. They alleged they were deprived of support, society, companionship, counsel, advice, and guidance when Hastings was committed to the penitentiary for seven to ten years.  The North Dakota Supreme Court determined that the wife could recover for loss of consortium under N.D.C.C. § 5-01-06, which permitted recovery by a person who is injured "in consequence of intoxication," for her husband's incarceration resulting from the sale of alcohol when he was intoxicated, but denied recovery to the daughter.  The court stated, "We dispose of the contention that to disallow the child's action is to deprive it of the equal protection of the laws by stating that we believe there is a rational basis for distinguishing between an action for the loss of consortium of a husband or wife and that of an action by a child for the loss of counsel and guidance of a parent."  Hastings, 246 N.W.2d at 753.

The 1987 amendments to the dram shop law included the addition of the comparative fault provisions of N.D.C.C. § 32-03.2-02, and the elimination of the words "or in consequence of intoxication."  Stewart, 520 N.W.2d at 44-45.  "The effect of the enactment of the comparative fault provisions was to significantly revise tort liability in this state to shift the focus from traditional doctrines to the singular, inclusive concept of fault.  N.D.C.C. § 32-03.2-02 clearly replaced the concept of joint and several liability with several allocation of damages among tortfeasors in proportion to the fault of those who contributed to an injury."  Id. at 45.  The current version of the dram shop statutes permits recovery in only one circumstance:  injury by an intoxicated person.  See N.D.C.C. § 5-01-06.1.

Unlike the prior dram shop statutes, N.D.C.C. § 5-01-06.1 does not permit recovery "in consequence of intoxication."  The Court finds that the intent behind the bill was to prevent the intoxicated person's family from recovering under North Dakota's current dram shop statutes.  As a result, the Court finds that the Plaintiffs are barred from recovering under N.D.C.C. § 5-01-06.1 for the death of Randall Hoff.  Judgment on the pleadings is granted on this claim.

B.     **WRONGFUL DEATH**

The Plaintiffs have also asserted a wrongful death claim in which they argue that the wrongful acts, neglect, negligence, and default of the Defendants resulted in the death of Randall Hoff.  The Plaintiffs contend the Defendants negligently ejected Hoff from the Elkhorn Bar "at a very late hour into weather and onto a slippery surface that could only be described as inclement and treacherous, especially for someone as highly intoxicated as the decedent." See Docket No. 23.  The Plaintiffs argue they have a valid wrongful death claim because Hoff, if he would have survived the fall, would have been able to bring a negligence action against the Defendants for his injuries.

The Defendants argue the wrongful death claim should be dismissed because they had no duty to protect Randall Hoff from his own actions.  "Plaintiffs allege Hoff died because his level of intoxication caused him to fall and strike his head on the pavement, and the defendant (sic) are at fault for serving him alcoholic beverages.  Plaintiffs appear to be alleging that the defendants had a duty to protect Randall Hoff from himself.  There is no legal support for such a duty, and no such cause of action exists against the defendants." See Docket No. 17.

Chapter 32-21 of the North Dakota Century Code governs death by a wrongful act.  Section 32-21-01 describes when a wrongful death action is maintainable:

> Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured, if death had not ensued, to maintain an action and recover damages in respect thereof, then and in every such case the person who . . . would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or of the tort-feasor, and although the death shall have been caused under such circumstances as amount in law to felony.

N.D.C.C. § 32-21-01.  A wrongful death action shall be brought by the following persons in the order named:  (1) the surviving husband or wife; (2) the surviving children; (3) the surviving mother or father;

(4) a surviving grandparent; (5) the personal representative; and (6) a person who has had primary physical custody of the decedent before the wrongful act. N.D.C.C. § 32-21-03.

In this case, the wrongful death claim is valid if Randall Hoff, had he survived the fall, would have been entitled to maintain a negligence action and recover damages under negligence. "An actionable negligence 'consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty.'" Azure v. Belcourt Pub. Sch. Dist., 681 N.W.2d 816, 819 (N.D. 2004) (quoting Groleau v. Bjornson Oil Co., 676 N.W.2d 763, 766 (N.D. 2004); Rogstad v. Dakota Gasification Co., 623 N.W.2d 382, 385 (N.D. 2001)). The duty extends to those injuries that are foreseeable. Nelson v. Gillette, 571 N.W.2d 332, 340 (N.D. 1997).

Before the Court can determine whether a duty exists, it must determine whether the dram shop statutes supersede the wrongful death claim. In Zueger v. Carlson, 542 N.W.2d 92 (N.D. 1996), the North Dakota Supreme Court considered whether the dram shop statutes superseded premises liability claims. Lillian Zueger and LeRoy Kudrna were injured at Boomers, a bar in Mandan, North Dakota, by an off-duty bouncer. Zueger and Kudrna filed a lawsuit against the bouncer and Boomers, raising dram shop and premises liability claims. Under their premises liability claims, Zueger and Kudrna alleged Boomers failed to provide adequate security and Boomers' employees and security personnel failed to come to their aid during the attack. Zueger and Kudrna settled the dram shop claims, and Boomers moved for summary judgment on the premises liability claims. The state district court found that "the dram shop statute, N.D.C.C. § 5-01-06.1, superseded all other forms of bar owner liability, and Zueger and Kudrna had failed to establish any common law duty of a bar owner to provide adequate security on its premises." Zueger, 542 N.W.2d at 94. Accordingly, the state district court dismissed all claims against Boomers. Zueger and Kudrna appealed to the North Dakota Supreme Court.

11

On appeal, Boomers argued that the dram shop statute, N.D.C.C. § 5-01-06.1, supersedes all common law liability of a bar owner and, therefore, the release of Zueger's dram shop liability claims also released the premises liability claims.  The North Dakota Supreme Court clarified that "negligence, willful conduct, and dram shop liability are integrated only 'for the allocation of fault' under comparative fault, and 'negligence remains a separate theory from dram shop liability.'"  Id. at 96 (quoting Stewart v. Ryan, 520 N.W.2d 39, 46 (N.D. 1994)).   The Supreme Court further said,

> Boomers' argument is premised upon the logical fallacy that, because "all fault" under comparative fault includes "dram shop," then "dram shop" must include "all fault." Besides defying logic, Boomers' argument demonstrates a misreading of Stewart. Stewart holds only that the dram shop liability is to be considered in comparing fault under N.D.C.C. ch. 32-03.2.  It did not imply dram shop liability extends to supersede other common law negligence actions.

Zueger, 542 N.W.2d at 96.   As a result, the North Dakota Supreme Court concluded the dram shop statutes do not supersede all common law liability of bar owners.

The North Dakota Supreme Court next considered whether Boomers had a duty to provide security to protect its patrons and to intervene in the assault once it began and, if there was such a duty, whether the dram shop statutes superseded this duty.  The Supreme Court found that Boomers owed a duty to protect its patrons from third parties pursuant to Section 344 of the Restatement (Second) of Torts, which provided:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a)    discover that such acts are being done or are likely to be done, or
>
> (b)    give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Zueger, 542 N.W.2d at 96.  The Supreme Court determined that under Section 344, a bar owner owes a duty to protect its patrons from the acts of third persons when the bar owner has reasonable cause to anticipate conduct on behalf of third persons which is likely to endanger the safety of patrons.  The Supreme Court found there was a genuine issue of material fact as to whether the assault was foreseeable and whether Boomers used reasonable care in trying to prevent the assault.  Accordingly, the North Dakota Supreme Court reversed the trial court's issuance of summary judgment for Boomers.

The Court finds that Zueger applies to the present action.  Pursuant to the finding in Zueger, dram shop statutes do not supersede all common law liability to protect patrons from the negligent acts of bar owners.  In other words, the dram shop law is not the exclusive remedy.  At issue in the wrongful death claim is whether the Defendants had a duty to exercise due care in ejecting Randall Hoff from the Elkhorn Bar.

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person."  Azure, 681 N.W.2d at 820.  Whether a duty exists is a question of law for the court to decide.  Collette v. Clausen, 667 N.W.2d 617, 621 (N.D. 2003).  Without a duty on the part of the Defendants, there can be no negligence.  See Schleicher v. W. State Bank of Devils Lake, 314 N.W.2d 293, 298 (N.D. 1982).

The Plaintiffs argue that the Defendants had a statutory duty to exercise ordinary care in ejecting Randall Hoff from the Elkhorn Bar.  The North Dakota Legislative Assembly has codified statutes imposing a general duty to others.  See N.D.C.C. ch. 9-10.  "Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of that person's rights."  N.D.C.C. § 9-10-01.  This Court has recently found N.D.C.C. § 9-10-01 applicable to a personal injury action against the manufacturer of a dragline.  See Kelly v. Bucyrus Int'l, 2009 WL 186157, at * 3 (D.N.D. Jan. 27, 2009) (finding that pursuant to N.D.C.C. §§ 9-10-01 and 9-10-06 the defendant had

13

a duty to exercise due care in the erection of the dragline, and to not expose those being supervised to unreasonable risks of harm).  The North Dakota Supreme Court has applied N.D.C.C. § 9-10-01 to a case involving wrongful death and survivorship claims.  See Hansen v. Scott, 645 N.W.2d 223, 232 n.1 (N.D. 2002) (finding N.D.C.C. § 9-10-01 applicable to an action in which North Dakota plaintiffs alleged wrongful death, survivorship, and 42 U.S.C. § 1983 claims against employees of the Texas Department of Criminal Justice for failing to properly supervise a parolee who was permitted to move to the State of North Dakota and subsequently caused the death of two North Dakota residents); Dinger ex rel. Dinger v. Strata Corp., 607 N.W.2d 886, 891 (N.D. 2000) (finding the defendants had a duty pursuant to N.D.C.C. § 9-10-01 to exercise due care in the performance of a construction project).

N.D.C.C. § 9-10-06 governs liability for willful acts and negligence.  "A person is responsible not only for the result of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or self."  N.D.C.C. § 9-10-06.  State and federal courts have likewise interpreted N.D.C.C. § 9-10-06 broadly.  See Kiemele v. Soo Line R.R. Co., 93 F.3d 472, 474-75 (8th Cir. 1996) (applying N.D.C.C. § 9-10-06 to a motor vehicle accident and finding the defendant railroad had a duty to exercise reasonable care in the operation of its train near a railroad crossing and in the maintenance and operation of the railroad crossing); Wills v. Shroeder Aviation, Inc., 390 N.W.2d 544, 547 (N.D. 1986) (finding N.D.C.C. § 9-10-06 applicable to an action involving an agent's conduct on behalf of the corporation); Schleicher v. W. State Bank of Devils Lake, 314 N.W.2d 293 (N.D. 1982) (applying N.D.C.C. § 9-10-06 to a negligence action involving whether a bank had a duty to determine the validity of a check before cashing it); Johnson v. Am. Motors Corp., 225 N.W.2d 57 (N.D. 1974) (finding N.D.C.C. § 9-10-06 applicable to a products liability action).

N.D.C.C. §§ 9-10-01 and 9-10-06 were derived from Sections 1708 and 1714 of the California Civil Code.  Johnson, 225 N.W.2d at 63.  Therefore, decisions of California courts are helpful in determining the scope of these sections and their applicability to the standard of care or conduct to be met by proprietors.

In McGarry v. Sax, 70 Cal. Rptr. 3d 519, 528 (Cal. Ct. App. 2008), the Court of Appeals of California said,

> Under general negligence principles and Civil Code section 1714, a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others.  This legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct.  Moreover, one's general duty of care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct, including reasonably foreseeable negligent conduct, of a third person.

In Lugtu v. Cal. Highway Patrol, 28 P.3d 249 (Cal. 2001), the California Supreme Court considered whether a police officer owed a duty of reasonable care to the persons the officer stopped for traffic violations.  Applying Section 1714, the court concluded the officer had a duty to exercise reasonable care because he engaged in an affirmative act in stopping the vehicle, and the duty included the obligation to not expose such persons to an unreasonable risk of injury by third parties.

In this case, the Plaintiffs argue that the Defendants failed to exercise due care when they ejected Randall Hoff from the Elkhorn Bar on February 6, 2007, without taking steps to protect him. The Plaintiffs state:

> Defendants knew Mr. Hoff was too intoxicated to care for himself, knew that Mr. Hoff was wearing insufficient clothing to survive the inclement weather, and knew, or should have known, that because Mr. Hoff was too intoxicated to stand while inside the bar, he would not be capable of maintaining his balance while outside on the snow and ice-covered walkway.  Their failure to take steps to protect Mr. Hoff in this circumstance was negligence.

See Docket No. 23.  The Plaintiffs argue that injury or death to Hoff on February 6, 2007, was foreseeable as a result of being ejected from the Elkhorn Bar.  The Plaintiffs contend that factors such as Hoff's severely intoxicated state, the inclement weather, and Hoff's insufficient clothing established the foreseeability of future harm.  As a result, the Plaintiffs essentially contend that the Defendants' act of ejecting Randall Hoff from the Elkhorn Bar on February 6, 2007, placed Hoff in a situation that exposed him to an unreasonable risk of harm.

N.D.C.C. §§ 9-10-01 and 9-10-06 have been interpreted broadly by state and federal courts to provide recovery for the negligent actions of the actor.  The Court finds this case falls squarely within the protections of N.D.C.C. §§ 9-10-01 and 9-10-06.  The Defendants undertook a duty to act with due care when they physically ejected Randall Hoff from the Elkhorn Bar.  Sections 9-10-01 and 9-10-06 apply when the actor engages in affirmative action that is either willful or negligent.  If on February 6, 2007, Randall Hoff had left the Elkhorn Bar voluntarily on his own accord and had slipped and fell somewhere off of the premises, N.D.C.C. §§ 9-10-01 and 9-10-06 would not apply because the Defendants would not have engaged in any affirmative action.  Instead, the Defendants affirmatively acted to eject Randall Hoff from the Elkhorn Bar and, as a result, they undertook a duty under Sections 9-10-01 and 9-10-06 to exercise due care in their actions so as not to create an unreasonable risk of injury to Hoff.

The finding that a duty exists is supported by Section 314A of the Restatement (Second) of Torts.  Section 314A of the Restatement (Second) of Torts governs special relations giving rise to a duty to aid or protect:

(1)     A common carrier is under a duty to its passengers to take reasonable action

(a)     to protect them against unreasonable risk of physical harm, and

(b)     to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

16

(2)     An innkeeper is under a similar duty to his guests.

(3)     A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4)     One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Restatement (Second) of Torts § 314A (1965).  Comment c of Section 314A clarifies the duty when the injury occurs away from the premises:

> The rules stated in this Section apply only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation.  A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises.  Nor is a possessor of land under any such duty to one who has ceased to be an invitee.

North Dakota courts have not applied, considered, or discussed the Restatement (Second) of Torts § 314A.

A majority of jurisdictions have adopted the standard set forth in the Restatement (Second) of Torts § 314A.  Many of these jurisdictions have applied Section 314A to cases related to illness or injury.  See Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes, 988 So. 2d 364 (Miss. 2008) (finding that the ice skating rink had a special relationship under Section 314A to render assistance to a knowingly injured patron); Marshall v. Burger King Corp., 856 N.E.2d 1048 (Ill. 2006) (finding the allegations in the complaint sufficient to establish that the defendant restaurant owed a duty under Section 314A to protect a customer from a third party whose vehicle crashed through the wall of the restaurant and injured the customer); Baker v. Fenneman & Brown Properties, LLC, 793 N.E.2d 1203 (Ind. Ct. App. 2003) (finding that defendant restaurant had a special relationship under Section 314A to assist a customer who felt nauseous and suddenly fell, hit his head on the floor, and was knocked unconscious and began having convulsions); Todd v. Mass Transit Admin., 816 A.2d 930 (Md. 2003)

17

(finding that the defendant transit system had a special relationship under Section 314A to protect a passenger from the visible assaults of other passengers); <u>Davidson v. Univ. of North Carolina at Chapel Hill</u>, 543 S.E.2d 920 (N.C. Ct. App. 2001) (finding that the university had a special relationship under Section 314A with a cheerleader to protect her from the foreseeable risk of injury during practice); <u>Kellner v. Lowney</u>, 761 A.2d 421 (N.H. 2000) (finding that hotel located on a public highway had a special relationship under Section 314A with its patrons to protect them from unreasonable exposure to the threat of injury from the highway); <u>Coville v. Liberty Mut. Ins. Co.</u>, 748 A.2d 875 (Conn. App. Ct. 2000) (finding that a special relationship under Section 314A existed where an intoxicated driver forced the passenger into the vehicle); <u>Donaldson v. Young Women's Christian Ass'n of Duluth</u>, 539 N.W.2d 789 (Minn. 1995) (adopting Section 314A but finding that a lodging house which houses low-income and mentally ill individuals did not have a special relationship under Section 314A to prevent its residents from committing suicide); <u>DeMontiney v. Desert Manor Convalescent Center Inc.</u>, 695 P.2d 255 (Ariz. 1985) (finding that a special relationship existed under Section 314A between a private health care facility and a suicidal patient); <u>Lloyd v. S.S. Kresge Co.</u>, 270 N.W.2d 423 (Wis. Ct. App. 1978) (finding that a store had a special relationship under Section 314A to render aid to an ill patron who was ejected from the store at closing time); <u>Grimes v. Hettinger</u>, 566 S.W.2d 769 (Ky. Ct. App. 1978) (adopting Section 314A but finding that a special relationship did not exist under Section 314A where the defendant homeowner failed to rescue a drowning invitee because he was unaware that the invitee was in danger); <u>DiSalvo v. Armae, Inc.</u>, 359 N.E.2d 391 (N.Y. 1976) (finding the allegations in the complaint sufficient to establish that a resort had a special relationship under Section 314A with its invitees to protect them against the foreseeable risk of traffic on a nearby road); <u>cf.</u> <u>Drew v. LeJay's Sportsmen's Café, Inc.</u>, 806 P.2d 301 (Wyo. 1991) (declining to adopt Section 314A to a situation

18

involving an ill invitee in a restaurant); Wright v. Webb, 362 S.E.2d 919 (Va. 1987) (declining to adopt Section 314A to an action where a patron sued the motel owner for the acts of a third party).

 Courts that have addressed cases involving intoxication differ on whether a duty is created. See Garofalo v. Lambda Chi Alpha Fraternity, 616 N.W.2d 647 (Iowa 2000) (finding that a national and local fraternity chapter did not have a special duty under Section 314A to protect initiates from harming themselves through excessive drinking); Coghlan v. Beta Theta Pi Fraternity, 987 P.2d 300 (Idaho 1999) (finding that there is no special relationship under Section 314A between Idaho universities and adult students to protect against the risks associated with voluntary intoxication); McGettigan v. Bay Area Rapid Transit Dist., 67 Cal Rptr. 2d 516 (Cal. Ct. App. 1997) (finding there was no special duty under Section 314A for a common carrier to assist an intoxicated plaintiff off of train platform even though the plaintiff was obviously intoxicated and could not care for himself); Pers. Representative of Starling's Estate v. Fisherman's Pier, Inc., 401 So. 2d 1136 (Fla. Dist. Ct. App. 1981) (finding a special relationship under Section 314A between a corporation operating a fishing pier and a drunk, passed out customer who was left alone lying on a commercial pier close to the ocean); Hovermale v. Berkeley Springs Moose Lodge No. 1483, 271 S.E.2d 335 (W. Va. 1980) (finding that a business had a special relationship under Section 314A to render assistance to an invitee after it knew or had reason to know that the invitee was ill or injured); Depue v. Flateau, 111 N.W. 1 (Minn. 1907) (finding that defendant sellers had a special relationship with an invitee who became violently ill at their house and owed a duty to exercise reasonable care to not expose him to danger by sending him from their home); Cincinnati, N.O. & T.P. Ry. v. Marrs' Adm'x, 85 S.W. 188, 189 (Ky. Ct. App. 1905) (finding that a railroad company owed a duty to an intoxicated passenger to ensure that he was taken safely to the railway yards or at least to avoid injuring him); Weymire v. Wolfe, 3 N.W. 541 (Iowa 1879) (finding that a bar had a duty to an unconscious and intoxicated patron it ejected at a late hour of night).

In <u>Hovermale v. Berkeley Springs Moose Lodge No. 1483</u>, the Supreme Court of Appeals of West Virginia considered whether a bar owed a duty under Section 314A to an ill patron. After consuming one drink at the bar, Charles Watson Hovermale collapsed and fell to the floor. The bartender told fellow patrons to take Hovermale to his vehicle to "sleep it off." <u>Hovermale</u>, 271 S.E.2d at 337. The patrons placed Hovermale in the front seat of the vehicle and rolled the window down halfway. When the bar closed for the evening, the employees went to the parking lot where the only vehicles were Hovermale's and theirs. They left without checking Hovermale's condition. The next evening, employees of the bar discovered Hovermale's body in the front seat of his vehicle. Medical testimony revealed that Hovermale had died of a heart attack within two to five hours of being placed in the vehicle. Citing Section 314A of the Restatement (Second) of Torts, the Supreme Court of Appeals of West Virginia held that the trial court properly instructed the jury that "a proprietor is under an ordinary duty of care to render aid to an invitee after he knows or has reason to know the invitee is ill or injured." <u>Id.</u> at 338.

<u>Hovermale</u> involved an ill patron at a bar, rather than a severely intoxicated patron as in the present case. Nonetheless, the Court finds the principle of <u>Hovermale</u> comparable. A proprietor simply cannot escape liability for ejecting an ill, injured, or intoxicated customer from its premises when the ejection creates an unreasonable risk of harm to the customer.

The Court is persuaded by the majority of jurisdictions which have adopted the Restatement (Second) of Torts § 314A. The Elkhorn Bar is a business in Richardton, North Dakota held open to the public and Ray Schmidt is the owner and operator of the bar. Pursuant to Section 314 of Restatement (Second) of Torts, an individual is not required to render aid or protection to another. An exception is found under Section 314A for (1) common carriers; (2) innkeepers; (3) possessors of land who hold it open to the public; and (4) one who is required by law to take or who voluntary takes the custody of

20

another under the circumstances.  The proposition of Section 314A(3) that a possessor of land who holds it open to the public is under a duty to its invitees is one of basic human decency, and the Court is persuaded that Section 314A(3) applies to the Defendants.  Pursuant to Section 314A(3), the Defendants were under a duty to exercise reasonable care and to take reasonable action as to their patrons, including a general duty to exercise reasonable care in ejecting Randall Hoff from the Elkhorn Bar in the midst of winter.

The evidence reveals that Randall Hoff was physically ejected a second time from the Elkhorn Bar at approximately midnight on February 6, 2007, wearing only a light jacket and jeans.  Hoff was so intoxicated that he was unable to keep his balance and fell on several occasions in the bar.  The outside temperature at the time was below zero.  The evidence reveals that Hoff's behavior was so disruptive that Hoff was ejected from the bar, allowed to re-enter, and then ejected a second time.  The Court finds there is clearly a factual dispute as to whether the Defendants exercised reasonable and ordinary care in ejecting Hoff from the Elkhorn Bar a second time on February 6, 2007, and whether injury or death was foreseeable as a result of the ejection.  These are genuine issues of material fact for the jury to address and resolve at trial, rather than this Court.  As a result, the Court declines to grant judgment on the pleadings on this claim.

**V.**     **CONCLUSION**

The Court finds that the Plaintiffs have failed to state a claim under North Dakota's dram shop statutes, N.D.C.C. § 5-01-06.1 and 5-01-09.  The Court also finds that the Plaintiffs have asserted a valid wrongful death claim under North Dakota law.  The dram shop law is not the exclusive remedy in this case.  The Defendants had a duty to Randall Hoff to exercise reasonable and ordinary care in ejecting Hoff from the Elkhorn Bar so as not to create a risk of unreasonable injury to Hoff.  This duty is premised on the special relationship which existed between landowners and invitees under the Restatement (Second) of Torts § 314A(3) and a general duty to others under N.D.C.C. §§ 9-10-01 and 9-10-06.  For the foregoing reasons, the Defendants' Motion for Judgment on the Pleadings (Docket No. 16) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 12th day of May, 2009.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court